Citation Nr: 1719090 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 16-33 203 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Chicago, Illinois


THE ISSUES

1. Entitlement to service connection for peripheral neuropathy, right upper extremity.

2. Entitlement to service connection for peripheral neuropathy, left upper extremity.

3. Entitlement to service connection for posttraumatic stress disorder (PTSD).

4. Entitlement to service connection for a heart condition.

5. Entitlement to a rating in excess of 10 percent for recurrent bilateral inguinal hernias, status post multiple herniorrhaphies.

6. Entitlement to a temporary total disability rating based on surgical or other treatment necessitating a period of convalescence under the provisions of 38 C.F.R. § 4.30.


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

Joshua Castillo, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1955 to June 1979.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from May 2013 and December 2013 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Chicago, Illinois.
 
The Board has accepted jurisdiction over the issues of entitlement to an increased rating for recurrent bilateral inguinal hernias and a temporary total disability rating appeal as they have been perfected, certified to the Board, and a review of the claims file reveals that the Agency of Original Jurisdiction (AOJ) is no longer taking action on these issues.

Finally, while additional evidence has not been uploaded to the Veteran's Virtual VA electronic file since the issuance of the last July 2016 statement of the case pertaining to the Veteran's hernia or a temporary total rating claims, an additional VA examination report and VA treatment records, dated to July 2016, have been uploaded since the issuance of the last June 2016 statement of the case pertaining to the Veteran's peripheral neuropathy claims. The Veteran has not waived AOJ consideration of such records; however, the Board finds that such records are not relevant to the Veteran's peripheral neuropathy claims as they do not address whether he has a current diagnosis of peripheral neuropathy or symptoms of the same, which, as discussed below, is the basis for the Board's decision to deny service connection. In this regard, such records pertain to the current nature of his reported peripheral neuropathy. Therefore, there is no prejudice to the Veteran in the Board proceeding with a decision at this time.

This appeal was processed using the Veterans Benefits Management System (VBMS) and Virtual VA paperless claims processing systems, and has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).
 
The issue of entitlement to service connection for PTSD is (addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.


FINDINGS OF FACT

1. At no time during the pendency of the claim has the Veteran had a current diagnosis of a peripheral neuropathy of the left or right upper extremities, and the record does not contain a recent diagnosis of disability prior to the Veteran's filing of a claim.

2. The Veteran has a current diagnosis of ischemic heart disease and confirmed service in the Republic of Vietnam from June 1970 to January 1971.

3. The Veteran's recurrent bilateral inguinal hernias, status post multiple herniorrhaphies, have manifested by small, postoperative recurrent hernias that are readily reducible and well supported by truss or belt; however, there is no evidence of inguinal hernias that are postoperative recurrent or unoperated irremediable and not well supported by truss or not readily reducible.

4. On September 30, 2013, the Veteran underwent surgery for a service-connected inguinal hernia, which resulted in light work and inability to drive for six weeks; however, there is no evidence that the surgery resulted in severe post-operative residuals, such as incompletely healed surgical wounds, stumps of recent amputations, therapeutic immobilization of one major joint or more, application of a body cast, the necessity for house confinement, or the necessity for continued use of a wheelchair or crutches (regular weight-bearing prohibited), or immobilization by cast, without surgery, of one major joint or more.


CONCLUSIONS OF LAW

1. The criteria for service connection for peripheral neuropathy, right upper extremity, are not met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2016).

2. The criteria for service connection for peripheral neuropathy, left upper extremity, are not met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2016).

3. The criteria for service connection for ischemic heart disease are met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2016).

4. The criteria for a rating in excess of 10 percent for recurrent bilateral inguinal hernias, status post multiple herniorrhaphies have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.3, 4.7, 4.114, Diagnostic Code 7338 (2016).

5. The criteria for a temporary total rating based on the need for convalescence following surgery for a service-connected disability have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.30 (2016).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016).

As the Board's decision to grant service connection for ischemic heart disease, claimed as a heart condition, is completely favorable, no further action is required to comply with the VCAA and implementing regulations.

As to the claims for service connection for peripheral neuropathy; an increased rating for bilateral inguinal hernias, status post multiple herniorrhaphies; and a temporary total disability rating based on surgical or other treatment necessitating a period of convalescence, December 2012 and November 2013 letters sent prior to the issuance of the rating decisions on appeal, informed the Veteran of the information and evidence necessary to substantiate his underlying claims. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. §§§ 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4).

In the instant case, the Board finds that all relevant facts have been properly developed and that all evidence necessary for equitable resolution of the issues decided herein has been obtained. The Veteran's service treatment records and post-service VA and private treatment records have been obtained and considered. He has not identified any additional, outstanding records that have not been requested or obtained.

The Veteran was also provided relevant VA examinations in February 2010, November 2012, November 2013, October 2014, and July 2016. The Veteran asserts that the November 2012 and July 2016 VA examinations are inadequate.

As to the November 2012 VA examination, the Veteran asserts that the examiner failed to clarify whether the Veteran has upper extremity peripheral neuropathy because he noted that the Veteran has peripheral neuropathy. See IHP (April 2017). The Board finds that the Veteran's contention is without merit. The rationale is that several VA examination reports were created in November 2012, to include one for diabetes mellitus and one for peripheral neuropathy. Here, the diabetes mellitus examination report indicates that peripheral neuropathy is a complication of the Veteran's diabetes mellitus; however, the peripheral neuropathy report explicitly states that the Veteran has peripheral neuropathy of the lower extremities, but not the upper extremities. See VA examination reports, 18, 48 (November 2012). When read as a whole, the Board finds that the November 2012 VA examination reports is unambiguous with respect to whether the Veteran has peripheral neuropathy of the upper extremities.

As to the July 2016 VA examination, the Veteran asserts that the examiner did not note that his hernia caused pain and discomfort or that he needs to wear a support belt and has difficulty lifting. See VA Form 9 (August 2016). The Board finds that the Veteran's contention is without merit. The rationale is that the VA examiner noted that the Veteran elects to wear a jock strap for support and to lessen tension on the inguinal areas and that he experiences discomfort in the inguinal area. The examiner concluded, however, that there was no indication that the Veteran needed a support belt because inguinal hernia was not present on physical examination. The Board finds that the examiner adequately conveyed the Veteran's assertions, and that the examiner and the Veteran merely differ on whether he requires a support belt. In essence, the Veteran's contention is a difference of opinion regarding the clinical necessity of a support belt. Neither the Veteran nor the Board are competent to render such a medical opinion. The Board finds that the examiner's opinion (that a belt is not necessary) is sufficiently based upon her clinical evaluation (which showed that a hernia was not present). Accordingly, the Board finds that the Veteran's contention regarding the July 2016 VA examination report lacks merit.

The Board finds that the November 2012, November 2013, and July 2016 examination reports are sufficient evidence for deciding the Veteran's claims for increase and a temporary total evaluation. The reports are adequate as they are based upon consideration of the Veteran's prior medical history and examinations, describe the hernia disability and the Veteran's postoperative status in sufficient detail so that the Board's evaluation is a fully informed one, and contain reasoned explanations.

The Board also finds that the February 2010, November 2012, and October 2014, VA examination reports are adequate to decide the Veteran's service connection claims as they are predicated on interviews with the Veteran, a review of the Veteran's medical records, and a physical examination. The opinions proffered considered all of the pertinent evidence of record, to include the statements of the Veteran, and provided a complete rationale, relying on and citing to the records reviewed. Moreover, the examiners offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A]medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions").

Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination and/or opinion regarding the issues of entitlement to service connection for peripheral neuropathy of the upper left and right extremities as well as his claims for an increased rating for a hernia disorder and a temporary total evaluation have been met.

In light of the foregoing, the Board finds that VA's duties to notify and assist have been satisfied. Thus, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993).

II. Service Connection Claims

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed. Cir. 1996) [(table)].

The record indicates that the Veteran served in the Republic of Vietnam. A presumption exists for Veterans who served in Vietnam during the Vietnam War Era where certain diseases associated with exposure to herbicide agents used in support of military operations in the Republic of Vietnam during the Vietnam era will be considered to have been incurred in service. 38 U.S.C.A. § 1116; 38 C.F.R. § 3.307(a)(6).

If a Veteran was exposed to a herbicide agent during active service, the following diseases shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied: AL amyloidosis, chloracne or other acneform diseases consistent with chloracne, Type 2 diabetes (also known as Type II or adult-onset diabetes mellitus), Hodgkin's disease, ischemic heart disease, all chronic B-cell leukemias, multiple myeloma, non-Hodgkin's lymphoma, Parkinson's disease, early-onset peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), and soft-tissue sarcomas (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). 38 C.F.R. § 3.309(e). VA has determined that there is no positive association between exposure to herbicides and any other condition for which it has not specifically determined that a presumption of service connection is warranted. Notice, 79 Fed. Reg. 20,308 (2014).

While early-onset peripheral neuropathy is among those diseases for which presumptive service connection is available, such must manifest to a degree of 10 percent or more within a year after the last date on which the veteran was exposed to an herbicide agent during active military, naval, or air service. 38 U.S.C.A. § 1116; 38 C.F.R. § 3.309(e); but see also 38 C.F.R. § 3.307(6)(ii).

Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Service connection may be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 38 C.F.R. § 3.310(a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). Further, service connection may not be awarded on the basis of aggravation without establishing a pre-aggravation baseline level of disability and comparing it to the current level of disability. 38 C.F.R. § 3.310(b).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).


Peripheral Neuropathy of the Upper Left and Right Extremities

The Veteran seeks service connection for peripheral neuropathy of the upper left and right extremities, which he relates to his service-connected diabetes mellitus.

The Board finds that the preponderance of the evidence is against the Veteran's claim of service connection for peripheral neuropathy of the upper extremities as the first element of service connection, i.e., a current diagnosis of peripheral neuropathy of the upper extremities, has not been shown at any point prior to, or during, the pendency of the claim. In this regard, the Veteran is service-connected for peripheral neuropathy of the lower extremities and asserts that he experiences tingling and numbness in his upper extremities. However, in February 2010, November 2012, and October 2014, VA examiner's affirmatively found that the Veteran does not have peripheral neuropathy of the upper extremities. Additionally, VA and private treatment records are absent any indication of tingling and numbness in his upper extremities, even when the Veteran was seeking treatment for pain and peripheral neuropathy of the lower extremities. See, e.g., VA treatment record (December 18, 2015).

In this regard, in McClain v. Nicholson, 21 Vet. App. 319, 321 (2007), the Court held that the requirement of the existence of a current disability is satisfied when a Veteran has a disability at the time he files his claim for service connection or during the pendency of that claim, even if the disability resolves prior to adjudication of the claim. However, in Romanowsky v. Shinseki, 26 Vet. App. 289 (2013), the Court held that when the record contains a recent diagnosis of disability prior to a Veteran filing a claim for benefits based on that disability, the report of diagnosis is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its pendency.

In the instant case, the probative evidence of record fails to demonstrate a current diagnosis of peripheral neuropathy of the upper extremities at any point during the pendency of the claim. While the Board has also considered the Court's holding in Romanowsky, supra, there is also no probative evidence of a recent diagnosis of disability prior to the Veteran's claim.

The only evidence suggestive of peripheral neuropathy of the upper extremities is the Veteran's reports in his claim, notice of disagreement, and VA Form 9, in which he stated that he experiences tingling and numbness in his upper extremities. The Board has considered the Veteran's allegations, but finds that he, as a lay person, is not competent to offer a diagnosis of peripheral neuropathy, that is, an organic disease of the nervous system, as he does not possess the requisite specialized knowledge. In this regard, such a diagnosis requires the administration and interpretation of physical and diagnostic test results. In the Veteran's case, the diagnosis of peripheral neuropathy is further complicated by clinical evidence that his back disability has caused numbness and tingling in the lower extremities. Indeed, medical expertise is needed to differentiate between numbness and tingling caused by his spinal disorder or his diabetes mellitus. Therefore, as such is a complex medical question, the Veteran is not competent to offer a diagnosis of peripheral neuropathy. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). Therefore, as the competent, objective medical evidence is against the finding that the Veteran's symptoms of tingling and numbness in the upper extremities are due to peripheral neuropathy, the Board finds that he does not have a current diagnosis of peripheral neuropathy of the upper extremities prior to, or during, the pendency of the claim. As such, service connection for peripheral neuropathy of the upper extremities is not warranted.

In reaching such decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim of entitlement to service connection for peripheral neuropathy of the upper left and right extremities. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.



A Heart Condition

The Veteran seeks service connection for a heart condition.

The Board finds that the preponderance of the evidence supports service connection for ischemic heart disease.

First, the Board presumes that the Veteran was exposed to herbicide agents used in support of military operations in the Republic of Vietnam because he has documented service in the Republic of Vietnam during the Vietnam War Era. See 38 U.S.C.A. § 1116; 38 C.F.R. § 3.307(a)(6). Additionally, there is no evidence to suggest that the Veteran was not exposed to herbicide agents during his service in the Republic of Vietnam.

Second, the Veteran has a longstanding history of atherosclerotic heart disease, which VA regulations include within the definition ischemic heart disease. See, e.g., Private treatment records (April 2, 1998; June 28, 2013); VA treatment record (April 21, 2016); 38 C.F.R. § 3.309(e). Additionally, two treatment providers affirmatively stated that the Veteran suffers from ischemic heart disease. See DBQ (February 2, 2015; April 13, 2017).

The Board notes that in February 2012 and February 2015, VA examiners opined that the Veteran does not have ischemic heart disease, but finds that their opinions are of no probative value. In this regard, neither examiner addressed the Veteran's well-documented history of atherosclerotic heart disease, which, as noted above, VA regulations include within the definition ischemic heart disease. Additionally, the February 2015 VA medical opinion was based, at least in part, on the finding that the Veteran had never suffered a myocardial infarction when, in fact, a November 6, 2012, cardiovascular evaluation notes "scarring from prior myocardial infarction," and a contemporaneous stress test was "suggestive of ischemia." The Board cannot rely upon the February 2012 and February 2015 VA medical opinions as they appear to be based upon inaccurate factual premises and fail to address favorable evidence central to the Veteran's claim. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993); Gabrielson v. Brown, 7 Vet. App. 36, 40 (1994).

Despite the inadequacy of the requested VA medical opinions, the Board need not seek an additional opinion as the medical evidence of record is sufficient to grant the Veteran's claim. Indeed, there is no competent, credible, and probative evidence to rebut the regulatory presumptions that the Veteran's current ischemic heart disease is related to his in-service herbicide exposure.

Accordingly, service connection for ischemic heart disease, initially claimed as a heart condition, is warranted.

III. Increased Rating Claim

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7. All benefit of the doubt will be resolved in the Veteran's favor. 38 C.F.R.
§ 4.3.

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Where, as here, entitlement to compensation has already been established and an increase in the disability rating is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Staged ratings are appropriate for an increased rating claim whenever the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

Recurrent Bilateral Inguinal Hernias

The Veteran seeks a rating in excess of 10 percent for his service-connected recurrent bilateral inguinal hernias, status post multiple herniorrhaphies. In this regard, such disability is rated pursuant to 38 C.F.R. § 4.114, Diagnostic Code 7338.

Under Diagnostic Code 7338, a 10 percent rating is warranted for postoperative recurrent hernias that are readily reducible and well supported by truss or belt. A 30 percent rating is warranted for small inguinal hernias that are postoperative recurrent, or unoperated irremediable and not well supported by truss, or not readily reducible. A 60 percent rating is warranted for large inguinal hernias that are postoperative, recurrent, not well supported under ordinary conditions, and not readily reducible when considered when considered operable.

The Board finds that the preponderance of the evidence is against the Veteran's claim for a rating in excess of 10 percent for his service-connected recurrent bilateral inguinal hernias, status post multiple herniorrhaphies. In this regard, the objective medical evidence of record shows that while the Veteran has experienced recurrent hernias, such are readily reducible and well supported by truss or belt.

Historically, on VA examination in November 2012, the Veteran reported the onset of a small reducible herniation to the right inguinal area in the past couple of months. The examiner confirmed the presence of the hernia and noted that it was small and readily reducible and that there was no indication for truss or belt.

In September 2013, the Veteran underwent right inguinal herniorrhaphy with tension free mesh repair.

On VA examination in November 2013, the Veteran denied any current hernia symptoms, to include pain, discomfort, or bulging. The examiner noted that physical examination showed no present hernia or indication for supporting belt.

On VA examination in July 2016, the Veteran reported that had not had any recurrence of the inguinal hernias since his November 2013 VA examination. The Veteran noted that he wears a jock strap for support and to lessen tension on the inguinal areas with good results. He also reported mild, occasional aching and discomfort in the postoperative area without specific functional impairment. The examiner noted that physical examination showed no present hernia or indication for supporting belt no other pertinent findings

Here, since the recurrent hernia noted on the November 2012 VA examination was readily reducible and well supported by truss or belt, the evidence supports the current 10 percent rating. Even though the evidence affirmatively shows that the Veteran has not had a hernia since September 2013, the Board will not move to reduce the Veteran's rating at this time.

The Board finds that the evidence does not support the next higher rating, 30 percent. In this regard, the evidence does not show that the Veteran's recurrent hernias are not well supported by truss or not readily reducible. Specifically, a recurrent hernia was only present on examination in November 2012, at which time the examiner specifically found that it was readily reducible. Significantly, the November 2013 and July 2016 VA examiners found that no hernia was present on examination, let alone hernia requiring belt or truss. Absent any objective medical evidence of hernia not well supported by truss or not readily reducible, the Board finds that a 30 percent rating is not warranted.

The Board has considered the Veteran's allegation that the July 2016 VA examiner failed to note that his hernia disorder requires a belt and that he wore a belt on examination, but finds that it is not sufficient to warrant the next higher rating. As discussed above, the next higher rating, 30 percent, requires small inguinal hernias that are postoperative recurrent, or unoperated irremediable and not well supported by truss, or not readily reducible. The Veteran does not contend that he had a hernia at the time of the July 2016 VA examination; and the November 2013 and July 2016 VA examiner affirmatively found that hernia was not present during either examination. Accordingly, it is undisputed that hernia was not present on either examination. Thus, the absence of hernia renders moot the Veteran's allegation that his hernia disorder currently requires belt or truss. To the extent that the Veteran's allegation implies the presence of hernia, the Board finds more probative the VA examiner's opinion that hernia was not present on examination. The rationale is that the VA examiner's opinion is based on physical examination and medical training and expertise. Therefore, as the competent, objective medical evidence is against the finding of hernia not well supported by truss or readily reducible, the Board finds that a rating in excess of 10 percent for recurrent bilateral inguinal hernias, status post multiple herniorrhaphies, is not warranted.

The Board has also considered whether this claim should be referred for consideration for an extra-schedular rating. An extra-schedular disability rating is warranted if the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that application of the regular schedular standards would be impracticable. 38 C.F.R. § 3.321(b)(1). 

In Thun v. Peake, 22 Vet. App. 111, 115-16 (2008), the Court explained how the provisions of 38 C.F.R. § 3.321 are applied. Specifically, the Court stated that the determination of whether a claimant is entitled to an extra-schedular rating under § 3.321 is a three-step inquiry. First, it must be determined whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. In this regard, the Court indicated that there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required.

Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as "marked interference with employment" and "frequent periods of hospitalization." Third, when an analysis of the first two steps reveals that the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extra-schedular rating. Id. 

The Board finds that the first Thun element is not satisfied here for the Veteran's hernia disorder. The Veteran's service-connected hernia disorder has manifested by signs and symptoms such as recurrent hernias that cause pain and discomfort, use of support apparatus, and impairment of his ability to perform physical activity, to include lifting and driving . Here, the rating schedule under Diagnostic Code 7338 explicitly contemplate the presence of hernias as well as the need and effectiveness of a support apparatus. The Board further finds that the rating criteria, namely the presence of a hernia reasonably contemplates the Veteran's reported pain and functional impairment. In this regard, a hernia is a section of the intestine that protrudes through an opening, tear, or weakness, in the abdominal wall. The mere presence of a hernia, let alone one that necessitates belt or truss, or requires surgical intervention, is inherently painful. Additionally, given its anatomical location (the abdominal wall), the mere presence of a hernia will likely impair function in the manner reported by the Veteran (difficulty lifting and driving). Accordingly, the Board finds that the rating criteria reasonably contemplates the Veteran's reported signs and symptoms, and their resulting impairment, even though they are not expressly listed in the criteria. In short, there is nothing exceptional or unusual about the Veteran's hernia disorder. Moreover, the Veteran is already in receipt of service connection for scars associated with the hernia disorder and there is no indication that his disorder results in any additional symptomatology for which a separate rating has not been assigned. 

Furthermore, the Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extra-schedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the symptoms associated with service-connected disabilities experienced. However, in this case, even after affording the Veteran the benefit of the doubt, there is no additional impairment that has not been attributed to a specific, rated disability. Accordingly, this is not an exceptional circumstance in which extra-schedular consideration may be required to compensate the Veteran for disability that can be attributed only to the combined effect of multiple conditions. 

Therefore, the Board finds that the rating criteria reasonably describe the Veteran's disability level and symptomatology for his service-connected disability. Consequently, the rating schedule is adequate to evaluate the Veteran's disability picture. Furthermore, neither the Veteran nor the record has raised the issue of whether referral for extra-schedular consideration based on the impact of his hernia disorder alone, or in combination with his other service-connected disabilities, is warranted. Yancy v. McDonald, 27 Vet. App. 484 (2016). Therefore, the Board need not proceed to consider the second factor, viz., whether there are attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization. Consequently, the Board concludes that referral of this case for consideration of an extra-schedular rating is not warranted. Thun, supra; Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996).

In reaching such decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim a rating in excess of 10 percent for recurrent bilateral inguinal hernias, status post multiple herniorrhaphies. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.


Temporary Total Rating under 38 C.F.R. § 4.30

The Veteran seeks entitlement to a temporary total rating based on the need for convalescence following surgery for his service-connected hernia disorder on September 30, 2013. See Private treatment record (September 30, 2013). In support of his claim, he reports that for six weeks after the surgery, he was on light duty and did not lift because he experienced pain and discomfort at the site of the procedure and that he was unable to drive for six weeks after the surgery.

Applicable law provides that a total disability rating (100 percent) will be assigned for convalescence without regard to other provisions of the Rating Schedule when it is established by report at hospital discharge (regular discharge or release to non-bed care) or outpatient release that entitlement is warranted, effective from the date of hospital admission or outpatient treatment and continuing for a period of 1, 2, or 3 months from the first day of the month following such hospital discharge or outpatient release. 38 C.F.R. § 4.30. In order to attain a temporary total rating, the Veteran must demonstrate that his service-connected disability resulted in (1) surgery necessitating at least one month of convalescence; (2) surgery with severe post-operative residuals such as incompletely healed surgical wounds, stumps of recent amputations, therapeutic immobilization of one major joint or more, application of a body cast, or the necessity for house confinement, or the necessity for continued use of a wheelchair or crutches (regular weight-bearing prohibited); or (3) immobilization by cast, without surgery, of one major joint or more. 38 C.F.R. § 4.30 (a).

The Board finds that the preponderance of the evidence is against the Veteran's claim for a temporary total rating based on the need for convalescence following surgery for his service-connected hernia disorder on September 30, 2013.

It is undisputed that the surgery did not result in severe post-operative residuals such as incompletely healed surgical wounds, stumps of recent amputations, therapeutic immobilization of one major joint or more, application of a body cast, or the necessity for house confinement, or the necessity for continued use of a wheelchair or crutches (regular weight-bearing prohibited); or immobilization by cast, without surgery, of one major joint or more. Accordingly, this case turns on whether the Veteran's surgery necessitated at least one month of convalescence.

Significantly, the need for convalescence must be "established by report at hospital discharge (regular discharge or release to non-bed care) or outpatient release." Here, the relevant treatment records show abdominal soreness shortly after the September 2013 surgery, but a November 2013 VA examination report shows that the Veteran denied pain, discomfort, or bulging with his hernia repair.

Additionally, notwithstanding the inconsistency between the Veteran's reported symptoms during the September 2013 VA examination and those made in subsequent filings in support of the requested benefit, the Board finds that the Veteran's reported need for light duty, pain, and inability to drive do not amount to the need for at least one month of convalescence. To that end, the assigned schedular rating criteria accounts some degree of pain and functional limitation due to postoperative recurrent hernias that are readily reducible and well supported by truss or belt. The Board finds that inability to drive and especially light duty to are less severe than the type and severity of symptoms described in 38 C.F.R. § 4.30, such as incompletely healed surgical wounds, stumps of recent amputations, therapeutic immobilization of one major joint or more, application of a body cast, or the necessity for house confinement, or the necessity for continued use of a wheelchair or crutches (regular weight-bearing prohibited); or immobilization by cast, without surgery, of one major joint or more. Furthermore, 38 C.F.R. § 4.30 provides a 100 percent rating to recognize totally disabling symptomatology. In this case, pain, inability to drive, and light duty are, by their very nature, not totally disabling. The fact that the Veteran denied any pain, discomfort, or functional loss on VA examination shortly after surgery is further evidence against his claim. Based on the foregoing, the Board cannot find that report at hospital discharge (regular discharge or release to non-bed care) or outpatient release establishes that surgery for the Veteran's service-connected hernia disorder necessitated at least one month of convalescence. Accordingly, the Board finds that a temporary total rating based on the need for convalescence following surgery for his service-connected hernia disorder on September 30, 2013, is not warranted.

In reaching such decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim a temporary total rating based on the need for convalescence following surgery for his service-connected hernia disorder on September 30, 2013. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.


ORDER

Service connection for peripheral neuropathy, right upper extremity, is denied.

Service connection for peripheral neuropathy, left upper extremity, is denied.

Service connection for a ischemic heart disease is granted.

A rating in excess of 10 percent for recurrent bilateral inguinal hernias, status post multiple herniorrhaphies, is denied.

A temporary total disability rating based on surgical or other treatment necessitating a period of convalescence under the provisions of 38 C.F.R. § 4.30, is denied.


REMAND

Although the Board regrets the additional delay, a remand is necessary to ensure that due process is followed and that there is a complete record upon which to decide the Veteran's claim so that he is afforded every possible consideration. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2016).

The Veteran seeks service connection for PTSD, which he relates to receiving incoming rocket and mortar fire and witnessing fellow soldiers get injured and die while stationed in Republic of Vietnam. See, e.g., Claim (April 8, 2010).

This case turns on whether the Veteran has a current diagnosis of PTSD and whether such is related to his reported in-service stressors.

Historically, on VA examination in August 2010, the Veteran was diagnosed with adjustment disorder with mixed depressed and anxiety mood.

In July 2012, the Veteran's VA mental healthcare provider diagnosed PTSD. See VA treatment record (July 17, 2012). However, in September 2012, a VA examiner found that the Veteran did not meet the DSM criteria for PTSD. While VA treatment records state that PTSD has been an active problem since July 2012, a November 2014 treatment notes suggests that another review of the record and another examination would be appropriate to ascertain whether the Veteran has a current diagnosis of PTSD. See VA treatment record (November 20, 2014). The Board finds that reexamination is needed to clarify whether the Veteran has had a current diagnosed of PTSD during the pendency of the appeal and, if so, whether such is related to his reported in-service stressors.

Finally, while on remand, the Veteran should be given an opportunity to identify any records relevant to the claim on appeal that have not been obtained. Thereafter, all identified records, to include updated VA treatment records dated from July 2016 to present, should be obtained.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. The Veteran should be given an opportunity to identify any outstanding private or VA treatment records relevant to the claim on appeal. After obtaining any necessary authorization from the Veteran, all outstanding records, to include updated VA treatment records from July 2016 to the present, should be obtained.

For private treatment records, make at least two (2) attempts to obtain records from any identified sources. If any such records are unavailable, inform the Veteran and afford him an opportunity to submit any copies in his possession.

For federal records, all reasonable attempts should be made to obtain such records. If any records cannot be obtained after reasonable efforts have been made, issue a formal determination that such records do not exist or that further efforts to obtain such records would be futile, which should be documented in the claims file. The Veteran must be notified of the attempts made and why further attempts would be futile, and allowed the opportunity to provide such records, as provided in 38 U.S.C.A. § 5103A(b)(2) and 38 C.F.R. § 3.159(e).

2. With respect to the Veteran's PTSD claim, forward the record and a copy of this Remand to an appropriate medical professional. The examiner shall note in the examination report that the record and the Remand have been reviewed.

(A) The examiner should identify whether the Veteran has had a diagnosis of PTSD since his May 2011 claim for PTSD.

The examiner is to address the diagnoses of PTSD in the Veteran's VA treatment records (e.g., July 17, 2012; July 11, 2016), to include whether such were made in accordance with the appropriate psychiatric criteria in regard to the adequacy of the symptomatology and the sufficiency of the stressor.

(B) The examiner should opine as to whether it is at least as likely as not (a 50 percent or greater probability) that any currently PTSD diagnosis is related to the Veteran's reported in-service stressors (e.g., receiving incoming rocket and mortar fire and witnessing fellow soldiers get injured and die while stationed in Republic of Vietnam).

The examiner's report must include a complete rationale for all opinions expressed.

3. After completing the above actions, to include any other development as may be indicated by any response received as a consequence of the actions taken in the preceding paragraphs, the Veteran's claim should be readjudicated based on the entirety of the evidence. If the claim remains denied, the Veteran and his representative should be issued a supplemental statement of the case. An appropriate period of time should be allowed for response.

Thereafter, the case should be returned to the Board for further appellate consideration, if otherwise in order. The Board intimates no opinion as to the outcome of this case. The Veteran need take no action until so informed. The purpose of this REMAND is to ensure compliance with due process considerations.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that 

are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
Cynthia M. Bruce
 Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs